IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
97 DEC 22 PM 3: 17
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
DEC 23 1997

| | |
|---|---|
| ANITA ROBINSON, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Civil Action No. CV-92-C-2004-S |
| ) | |
| BOEING COMPANY, ) | |
| d/b/a/ BOEING DEFENSE & SPACE GROUP, ) | |
| ) | |
| Defendant. ) | |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL ORDER APPROVING CONSENT DECREE

This matter came before the Court for hearing on November 20, 1997, for final approval of the settlement between the named plaintiffs and plaintiff class and Defendant, The Boeing Company ("Boeing"). The Court received evidence from plaintiffs and from Boeing on the fairness, adequacy, and reasonableness of the proposed settlement. The Court has reviewed the parties' Joint Motion for Approval of Consent Decree, the proposed consent decree, the notice that was sent to the named plaintiffs and plaintiff class members, the affidavits of Thomas C. Peters regarding service of the Notice and proposed Consent Decree, and the applicable law. The Court has also considered the factual circumstances out of which the claims in this litigation arose and has heard from counsel for the respective parties, objecting members of the plaintiff class, and counsel representing the objectors regarding the fairness, reasonableness and adequacy of the proposed settlement. Additionally, the Court has considered the evidence the parties have submitted concerning the employment practices at Boeing's facility in Huntsville, Alabama. Finally, the Court has reviewed the record, the prior proceedings in this action, and the testimony

of mediators Charles A. Powell, III and Frank S. James, III, who mediated the settlements of the claims of the plaintiff class and the individual named plaintiffs.

The Court received written objections to the proposed settlement from 38 class members, which objections have been considered by the Court. Further, the objectors were given the opportunity to participate in the fairness hearing, explain their opposition to the settlement, question class counsel regarding the fairness and adequacy of the settlement, and to opt out of the settlement. The hearing record has been supplemented by post-hearing notices received from the purported objectors. Only one class member, Cinda E. Feagan, has elected to opt out of the settlement. The consent decree has been revised to reflect that opt-out election.

Considering all of the evidence presented in support of and opposition to the proposed settlement, the arguments presented by counsel for plaintiffs, Boeing and the objectors, the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. The Complaint in this action was filed on August 24, 1992, and subsequently amended to include class allegations that Boeing discriminated against its African-American employees with respect to a broad range of employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981.

2. The Court has certified a class in this case consisting of all African-American employees who have been employed in Pay Codes 2, 4, and 6 at the Missiles & Space Division facility of The Boeing Company in Huntsville, Alabama, who claim that they have been discriminated against because of their race in regard to compensation, totem rankings, retention

ratings, layoffs and any and all other terms and conditions of employment at any time since February 19, 1991.

3. On motion of plaintiffs and Boeing, the Court entered an order on October 1, 1997, preliminarily approving the settlement and requiring Boeing to provide notice to class members of the settlement in a form approved by the Court.

4. On or about October 10, 1997, and in accordance with orders of this Court, defendant Boeing sent notice by first class mail, postage prepaid, to each member of the plaintiff class. The notice was mailed to approximately 164 persons identified from Boeing's records as class members. (Affidavit of Thomas C. Peters).

5. Approximately 19 of the notices mailed by Boeing were returned by the United States Postal Service. Boeing re-mailed these notices to new addresses obtained from the Postal Service, independent research, and other sources. None of these re-mailings have been returned. (Supplemental Affidavit of Thomas C. Peters).

6. The Court finds that the time period from the date notice was mailed to the objection deadline was fair, reasonable and sufficient for class members to make a reasoned decision regarding the settlement.

7. The Court approved the specific content of the notice mailed by Boeing to class members identified from its records. The notice clearly and accurately described, among other things, this action and the class, gave notice of the settlement, stated the dates for filing objections, specifically described the claims against Boeing that were being released, and informed class members of the date of the fairness hearing, their right to appear at that hearing, either in person

or through counsel, and the availability of additional information about the settlement and where such information might be obtained.

8. The costs associated with all such notices to class members have been paid by Boeing.

9. The notice to class members was effective. The Court finds that it was reasonable and the best practicable notice to the class under the circumstances of this case.

10. The settlement discussions among the parties were conducted in good faith and at arms-length. The threat of continued litigation in this case against Boeing gave counsel for the plaintiff class sufficient leverage to negotiate a fair settlement on behalf of the class.

11. After many months of settlement negotiations among counsel for the parties, the parties agreed to submit the class claims to mediation by Charles A. Powell, III, an attorney with extensive experience in complex employment discrimination litigation. The parties submitted written summaries of their respective positions, supported by statistical analyses prepared by expert economists, to the mediator prior to the mediation. Mr. Powell conducted a mediation regarding the class claims in this action on January 29, 1997, which lasted two days. The parties were able to agree upon the terms of class settlement only after vigorous, arm's length negotiations among counsel for the parties with the participation of Mr. Powell as mediator. (Deposition of Charles A. Powell, III)

12. After the settlement of the class claims, the individual claims of the named plaintiffs were mediated over the next several months before Frank S. James, III, an attorney with considerable experience in discrimination litigation who has mediated more than one hundred lawsuits involving claims of employment discrimination. With Mr. James' assistance and

following vigorous arm's length negotiations, the parties were able to agree upon the terms of settlement of all but two of the named plaintiffs' claims.

13. The Court finds that the mediators, plaintiffs, and counsel for the plaintiff class were well equipped with the information necessary to make a reasoned judgment about the alleged prospective worth of the claims of the plaintiff class prior to entering into settlement negotiations and mediation with Boeing.

14. Counsel for the plaintiff class are experienced in complex employment discrimination litigation, including class litigation, and are competent attorneys who have provided, and can be expected to provide, vigorous and professional representation which serves not only the interests of the named plaintiffs, but also the interests of absent class members. There are no conflicts between plaintiffs' counsel and absent class members which would make their representation inappropriate or inadequate.

15. In support of settlement, Boeing presented evidence regarding employment practices at its Huntsville facility in the form of affidavits from Clay. H. Crosbie, Human Resources Director for the Missiles & Space Division of the Defense & Space Group of The Boeing Company, and Dr. Mary Dunn Baker, an expert economist and statistician engaged by Boeing to evaluate the plaintiffs' claims in this lawsuit.

16. Boeing presented evidence that its operations in Huntsville are part of its Missiles & Space Division, which is a division of Boeing's Defense & Space Group. In recent years, the primary function of Boeing in Huntsville has been the design and construction of the International Space Station. The jobs at Boeing's facility in Huntsville are organized into five "pay codes." At issue in this lawsuit are Pay Code 2 (general office employees), Pay Code 4 (engineers), and

Pay Code 6 (professional and administrative employees). Pay Codes 1 (hourly employees represented by a union) and 7 (management) are not the subject of claims in this lawsuit. (Affidavit of Clayton H. Crosbie)

17. Boeing denies plaintiffs' claims that it has discriminated against its African-American employees with respect to compensation, layoff, totem rankings, retention ratings, or any and all other terms or conditions of employment. (Affidavit of Clayton H. Crosbie) In addition, counsel for the plaintiff class acknowledged that statistical analyses conducted by plaintiffs' expert statistician, Dr. Edwin Bradley, revealed no statistical disparities in most areas of employment decisions and practices at Boeing in Huntsville. He also advised the Court that in some areas where Dr. Bradley's analyses indicated potential disparities (totem rankings and retention ratings), there was no evidence that these disparities actually had a statistically adverse impact on African-American employees. Mr. Childs further advised the Court that Dr. Bradley's analyses of plaintiffs' class claims of discrimination in regard to compensation were disputable and that, even if they were proven, were in a range of $500,000 to $900,000.

18. In 1996, the average white employee at Boeing was older (41.79 years) than the average African-American employee (38.22 years); the average white employee at Boeing had more years of education (14.91 years) than the average African-American employee (14.15 years); and the average white employee had worked at Boeing longer (10.38 years) than the average African-American employee (8.75 years).

19. Boeing also presented evidence that its hiring in Huntsville has mirrored the availability of qualified African-Americans in the recruitment areas from which Boeing draws its work force. Boeing presented statistical studies which compared the availability of African-

6

Americans in the relevant recruitment areas with actual African-American hires at Boeing from 1990 through 1996 and showed that African-Americans accounted for a larger percent of new hires during the period from February 20, 1991 through June 30, 1996, than their availability. (Affidavit of Clayton H. Crosbie)

20. Boeing presented evidence that African-American employees at Boeing have been promoted at a slightly higher rate than whites, in that African-American employees received 6.4 percent of all promotions during the period from February 20, 1991 to June 30, 1996, in comparison with an overall representation of 5.1 percent of the work force as of December 31, 1996. African-American employees received 9.0 percent of the promotions to supervisory positions during the same period. (Affidavit of Clayton H. Crosbie)

21. Boeing presented evidence that African-American employees have received more transfer opportunities than their percentage of representation in the work force in that African-Americans received 7.3 percent of all transfers during the period from February 20, 1991 to June 30, 1996. (Affidavit of Clayton H. Crosbie)

22. Boeing presented evidence that significant management positions of Boeing's Missiles & Space Division has been held by African-Americans through the years. For example, Art Carter, an African-American male, was the Vice President and General Manager of the Missiles & Space Division during the late 1980's and early 1990's; Jerry Calhoun, an African-American male, was Human Resources Director of the Missiles & Space Division during the late 1980's. (Affidavit of Clayton H. Crosbie)

23. Boeing presented evidence that, as Boeing's design and engineering work on the International Space Station has neared completion, the number of employees required to perform

that work has decreased. Consequently, Boeing's facility in Huntsville has been in a downsizing mode in recent years. Specifically, its work force has decreased from 2,679 employees in 1992 to 1,742 employees as of August 1, 1996. (Affidavit of Clayton H. Crosbie)

24. Boeing produced evidence that the procedures for retention and layoff of its personnel are well defined and nondiscriminatory. Periodically, managers within each skill group (or "retention group") at Boeing assign "retention ratings" to employees for the purpose of quantifying the employees' relative contribution and value to the company in the event of reductions in force. An internal appeal process is available to employees who want a review of those decisions. Since 1994, Boeing has conducted statistical analyses of these retention ratings to confirm that there is no statistically significant racial differences between the ratings. (Affidavit of Clayton H. Crosbie)

25. When Boeing determines that it will be necessary to reduce its work force, a Stabilization Board composed of senior and executive management reviews the recommended employees for layoff to insure that the proposed layoff has no adverse impact on protected groups, including African-Americans. Boeing produced evidence that the representation of African-American employees in the Huntsville Missiles & Space Division actually increased during the period from 1991 to the date the parties agreed on settlement. (Affidavit of Clayton H. Crosbie) Analyses performed by Dr. Mary Baker using the binomial method and controlling for years of service also revealed that there was no statistically significant differences between the rates of layoff of comparable African-American and white employees during any time periods relevant to the litigation. (Affidavit of Mary Dunn Baker)

26. Boeing further produced evidence that its procedures for compensating its employees are well defined and non-discriminatory. Josephine White, an African-American female, was the Compensation Manager of the Missiles & Space Division throughout the time period relevant to this litigation and is responsible for insuring that those procedures are administered in a non-discriminatory manner. (Affidavit of Clayton H. Crosbie)

27. Boeing produced evidence that the average rate of salary increases resulting from promotion and selective adjustments were slightly higher for African-American employees than whites, in that African-American employees' salaries increased 5.1 percent during the period from February 20, 1991 to June 30, 1996, as a result of promotions and/or selective adjustments, while white employees' salaries increased 4.9 percent. (Affidavit of Clayton H. Crosbie)

28. Professional analyses performed by Dr. Mary Baker revealed that there was no evidence of any statistically significant difference between initial and current salaries of comparable African-American and white employees. Dr. Baker conducted a statistical study of the compensation of employees in Pay Codes 2, 4, and 6 at Boeing's Huntsville facility during the years 1989 through June 30, 1996, using a multivariate regression analysis that controlled for age at hire, years of service at Boeing, years of Boeing service squared, education level, starting salary, and experience in other Pay Codes at Boeing. This study revealed no statistically significant differences between the average compensation of black and white employees in any year in any pay code. (Affidavit of Mary Dunn Baker)

29. Dr. Baker also performed a statistical study of starting pay of employees in Pay Codes 2, 4, and 6 at Boeing's Huntsville, Alabama, facility during the years 1991 through June 30, 1996, using a multivariate regression analysis and controlling for level of education and age

9

at the time of hire. This study revealed statistically significant disparities between the starting salaries of black and white employees only with respect to those employed in Pay Code 4 in 1992. The race variable coefficient for that Pay Code 4 disparity was positive, indicating that black employees in Pay Code 4 in 1992 were paid higher starting salaries than white employees with similar characteristics. (Affidavit of Mary Dunn Baker)

30. The Court received written objections to the settlement from 38 persons, many of whom were present at the fairness hearing or were represented at the hearing by their attorneys.

31. The Court finds that two objectors, Toni Fleming and Joyce Appleton-Harris, are not class members. Ms. Fleming's objections were based on claims she had asserted in a previous lawsuit, which were dismissed on a motion for summary judgment by Boeing and later affirmed on appeal. Although Ms. Appleton-Harris contends that her father has African-American ancestry, the evidence indicates that she had advised Boeing that she was Asian and was carried by Boeing in that EEO category.

32. The Court allowed class members who objected to the consent decree and their counsel to explain the bases for their objections and gave them an opportunity to opt out of the settlement. The Court is aware that Ms. Cinda E. Feagin, the only objector seeking to opt out, has been allowed to opt out of the consent decree by the parties. The Court has duly considered the objections in this case and holds that they raise no genuine issue as to the fairness, adequacy, and reasonableness of the settlement and do not provide a reasonable basis to withhold final approval of the consent decree.

33. In making the determination of the reasonableness of attorneys' fees, the Court has considered plaintiffs' counsel's representations to the Court concerning the time he and members

of his firm devoted to this litigation, the expenses they incurred, and a number of other factors. These factors included, **inter alia,** the nature and value of the subject matter of the employment; the learning, skill, and labor requisite to its proper discharge; the professional experience and reputation of the plaintiffs' attorneys; the weight of the responsibility; the measure of success achieved; the nature and length of a professional relationship; and the fee customarily charged in the locality for similar legal services.

34. Counsel for the plaintiffs have negotiated a substantial financial settlement despite the existence of substantial dispute regarding the merits of the claims of the plaintiffs. The plaintiffs' success in this regard is indicated by the fact that only one of the over 160 class members elected to opt out of the settlement.

35. Accordingly, the Court finds that the amount of attorneys' fees and costs of $600,000 paid to counsel for plaintiffs and the plaintiff class, which, according to plaintiffs' counsel, is substantially less than the firms' total time and expenses in the case, is fair and reasonable under the circumstances.

36. On the basis of the foregoing, this Court finds that the settlement is fair, adequate, reasonable, and just and that the relief provided for thereby is adequate and sufficient.

37. Any finding of fact that should be denominated a conclusion of law shall be deemed to be a conclusion of law.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over this civil action, the settling parties in this action, and the subject matter of this action. Venue is appropriate in this judicial district.

2. Class actions may not be voluntarily dismissed or compromised without approval of the court, *Fed. R. Civ. P.* 23(e), and proponents of a class settlement bear the burden of proving by a preponderance of the evidence that class certification is appropriate and that the settlement is fair, adequate and reasonable.

3. Certification of a class is generally left to the sound discretion of the trial court. *Amchem Products, Inc. v. Windsor,* 117 S. Ct. 2231, 2248 (1997). Here, the requirements of Federal Rule of Civil Procedure 23(a) and (b)(2) are satisfied. Specifically, this Court finds that the class is so numerous that joinder of all members is impracticable, there are questions of law and fact common to the class, the claims of the representative parties are typical of the claims of the class, the named plaintiffs fairly and adequately protect the interests of the class, and Boeing has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief to the class as a whole.

4. The named plaintiffs are members of the class, allege unlawful employment practices that have class-wide effects, have allegedly suffered the same injury as absent class members, have the same incentive as any absent class member to prosecute this action vigorously, and do not have any conflicting interests with absent class members. In addition, class counsel are competent attorneys who have represented the class zealously and do not have any conflicts with absent class members. The adequacy of representation requirement is satisfied for the class.

5.    Under Federal Rule of Civil Procedure 23(d)(2), the court may make appropriate orders "requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action." *Fed. R. Civ. P.* 23(d)(2).

6.    As previously ordered by this Court, the notice provided to absent class members in this case provided notice of the proposed extent of the judgment, of the opportunity of members to signify whether they consider the representation fair and adequate, and to present claims or otherwise to come into the action, consistent with Rule 23(d)(2) of the Federal Rules of Civil Procedure. The notice to the class members, which was attached to the Joint Motion, and the procedures set forth in that notice, satisfied the requirements of Federal Rule of Civil Procedure 23 and due process.

7.    Consistent with *Holmes v. Continental Can Co.*, 706 F.2d 1144 (11th Cir. 1983), an opportunity to opt out was provided by the Court. The proposed consent decree has been revised to reflect the decision of one class member to opt out following notice of the proposed settlement to the plaintiff class.

8.    "[T]he test of the evidence which the Court should receive on a settlement is whether the proffered proof is of a nature which will aid it in passing upon the essential fairness and equity of the settlement." *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 n.8 (4th Cir. 1975); *Mars Steel Corp. v. Continental Illinois Nat'l Bank,* 120 F.R.D. 53. 56 (N.D. Ill. 1988) (citing *Glicken v. Bradford,* 35 F.R.D. 144, 148 (S.D.N.Y. 1964)), *cert. denied,* 424 U.S. 967 (1976);

13

*see Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("[t]he trial court may limit its proceeding to whatever is necessary to aid it in reaching an informed, just, and reasoned decision.") (citing *Flinn*).

9. In determining whether the settlement is fair, reasonable and adequate, "the court may limit its fairness proceeding to whatever is necessary to aid it in reaching a just and informed decision." *In re Agent Orange*, 597 F. Supp. 740, 760 (E.D.N.Y. 1984). While an evidentiary hearing is not required, typically courts hold a hearing so that objectors to the settlement may make their views known. *Id.; see also Patterson v. Stovall*, 528 F.2d 108, 112 (7th Cir. 1976); *City of Detroit v. Grinnel Corp.*, 495 F.2d 448, 462-64 (2d Cir. 1974).

10. Moreover, the use of affidavits in the fairness hearing is within the Court's discretion. *Mars Steel Corp. v. Continental Illinois Nat'l Bank*, 120 F.R.D. 53. 56 (N.D. Ill. 1988) (citing *Glicken v. Bradford*, 35 F.R.D. 144, 148 (S.D.N.Y. 1964)).

11. The Court finds that its consideration of affidavits; arguments of counsel for the class, Boeing, and the objectors; pleadings; and other matters to be proper under the law and necessary for complete and thorough consideration of the fairness, reasonableness and adequacy of the settlement.

12. In determining the fairness of a class action settlement, this Court has considered a number of factors, including plaintiffs' likelihood of success at trial, the range of possible recovery, the complexity, expense, and duration of the litigation, the substance and amount of opposition to the settlement, and the stage of the proceedings at which the settlement was achieved.

13. With respect to these factors, the Court has weighed the benefits of the settlement against the prospect of plaintiffs prevailing at trial and the potential range of recovery reasonably likely should plaintiffs prevail. The benefits conferred by the proposed settlement in this case are substantial. For purposes of evaluating the fairness, adequacy, and reasonableness of this settlement, it is sufficient to state that recovery of any damages by the class is not certain. This uncertainty of recovery, coupled with the costs of proceeding against Boeing in what would no doubt be a complicated and extended process, weigh in favor of approving the settlement.

14. The Court also notes that plaintiffs' counsel are experienced and competent attorneys able to analyze in a realistic fashion the merits of their case, the prospects for recovery, the strategic implications of a settlement, and the value of a settlement, especially at this stage of the litigation. They have recommended approval of the settlement, and that judgment is entitled to weight. *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977) (court "entitled to rely on experienced counsel for the parties"); *id.* ("absent fraud, collusion, or the like, [a court] should be hesitant to substitute its own judgment for that of [class] counsel"); *Sims v. Montgomery County Comm'n,* 890 F. Supp. 1520, 1529 n. 13 (M.D. Ala. 1995) (giving great weight to judgment of class counsel concerning settlement where "no one ha[d] suggested the presence of [a] conflict or questioned in any manner counsel's dedication to the parties and classes they represent[ed]").

15. Although a number of class members initially objected to the settlement, many of the objectors withdrew their opposition after the proposed consent decree was explained and they were given an opportunity at the fairness hearing to hear evidence regarding the distribution of class back pay. Only one class member chose to opt out of the settlement. Accordingly, opposition to this settlement is modest given the size of the class.

16. The continued litigation and trial of this action would have been lengthy, complex, and expensive. Considering the nature of this litigation and the uncertainties surrounding it, disapproval of the settlement would jeopardize a substantial recovery for the class.

17. The Court also concludes that the attorneys' fee request is fair, reasonable and within the range approved by federal courts within the Eleventh Circuit and elsewhere. Any objections to the fee request are overruled.

**ORDER**

For all the foregoing reasons, this Court approves and orders the settlement of this class action on the terms reflected in the Consent Decree.

ENTERED, as of this 24th day of November, 1997.

ENTERED
DEC 2 3 1997

_____
U. W. Clemon
United States District Judge

16